# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **CRIMINAL ACTION** |
| Plaintiff, | |
| v. | **NO. 88-490-KSM-1** |
| **LEROY BUHL,** | |
| Defendant. | |

## MEMORANDUM

**MARSTON, J.**                                                                                       **December 22, 2022**

Defendant Leroy Buhl is currently serving a life sentence at the United States Penitentiary Coleman Federal Correctional Complex – Coleman II (FCC Coleman) after being convicted by a jury in 1989 for one count of kidnapping in violation of Title 18, United States Code 1201(a). Presently before the Court is Buhl's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 127.) Buhl asserts that his age, good behavior, the effect of the COVID-19 pandemic on his life expectancy, and the fact that he has served at least 30 years of his life sentence warrant his release from federal custody so that he may be transferred to a state prison in Pennsylvania to serve a state sentence.[1] (*See id.*) The Government opposes

---

[1] At the same time a federal grand jury returned a Bill of Indictment charging Buhl with kidnapping, Buhl also faced state charges in Pennsylvania and New Jersey related to the same kidnapping offense, as well as another kidnapping offense involving his niece. (*See* Pre-Sentence Report ("PSR") at pp. 15–16.) Subsequently, Buhl was sentenced to 20–40 years in prison in Pennsylvania and sentenced to life imprisonment, plus 30 years, in New Jersey. (Doc. No. 129 at 3.)

1

Buhl's motion, arguing that Buhl has not presented any basis for consideration of compassionate release.[2] (Doc. No. 129.)

For the reasons discussed below, the Court denies Buhl's motion.

## I. BACKGROUND

Buhl's federal incarceration arose out of a vicious and appalling crime. In the early morning hours of August 6, 1988, approximately three months after being released on state parole for a prior rape conviction, Buhl kidnapped a woman at knifepoint and forced her to drive by threatening to kill her. (*See* PSR at p. 7.) Buhl met the woman, who worked as a dancer, at a local bar in Long Branch, New Jersey. (*Id.*) After kidnapping the woman, Buhl proceeded to rape her multiple times, vaginally and orally, both in the car and at a shack in a wooded area in Pennsylvania. (*Id.* at p. 8.) Buhl also threatened, taunted, and beat the woman during the assaults. (*Id.*) Around 8:30 p.m., Buhl left the shack with the woman. (*Id.*) Several minutes later, he was stopped by police, at which point the woman escaped from the vehicle as Buhl fled off at high speed. (*Id.*) Shortly thereafter, Buhl crashed the car. (*Id.*) When a man came to his assistance, Buhl then stole the man's car. (*Id.* at pp. 8–9.) That car was found about a week later, burned and destroyed. (*Id.*)

On September 23, 1988, while still evading authorities for the crime he committed on August 6, 1988, Buhl allegedly committed a similar crime.[3] *See United States v. Buhl*, 712 F. Supp. 53, 54–55 (E.D. Pa. 1989) (recounting the crime that occurred on September 23, 1988, and admitting that incident under Rule 404(b) during Buhl's trial for the crime that occurred on

---

[2] The Government also argues that if the Court were to find any basis to consider release, Buhl's motion must nevertheless be denied upon consideration of the 18 U.S.C. § 3553(a) sentencing factors, "given the horrific nature of his criminal history." (Doc. No. 129 at 4–5.)

[3] The Court does not have any information as to whether Buhl was ultimately convicted of this offense.

August 6, 1988).  Buhl kidnapped his niece in Old Bridge, New Jersey, forcing her into her vehicle at knifepoint.  *Id.*  He then repeatedly beat, choked, and sexually assaulted her, held her at gunpoint, and verbally abused her with taunts and threats.  *Id.*  Eventually, his niece escaped, and Buhl was apprehended by the authorities on September 24, 1988.  *Id.*

In November 1988, while in custody at the Schuylkill County Prison, Buhl attempted to hire an inmate to kill not only the victim in this case—the dancer from the bar—but also his niece and other witnesses to his crimes.  (*See* PSR at p. 9.)  He provided "verbal and written information" as to "the names, descriptions, and addresses of the individuals he wanted killed, and suggested methods to be used to kill them."  (*Id.*)  Buhl reportedly advised the inmate that if these witnesses were killed, "the feds" could not make a case against him.  (*Id.*)

Buhl was 41 years old at the at the time of these events and already had a significant and lengthy criminal history.  (*See id.* at pp. 10–15.)  His record demonstrates an inclination for committing crimes of a sexual nature.  Specifically, he was previously charged with the rape and assault of two women in 1967 and forcible sexual compulsion of a 15-year-old girl in 1976.  (*Id.* at pp. 10–11; 14–15.)  For the latter crime, he spent almost 12 years in state prison and was paroled on May 19, 1988—a mere three months before he committed the kidnapping and assault in this case.  (*See id.*)

On January 31, 1989, a federal jury convicted Buhl of one count of kidnapping in violation of 18 U.S.C. 1201(a)(1), arising out of his conduct on August 6, 1988.  (*Id.* at p. 7.)  On August 24, 1989, the late Honorable Daniel H. Huyett, III, sentenced Buhl to life imprisonment.  (*See* Aug. 24, 1989 Sentencing Hr'g Tr. 81:1–22.)  Buhl appealed.  The Third Circuit affirmed the district court's judgment.  *See United States v. Buhl*, 899 F.2d 1219 (3d Cir. 1990).

Buhl is currently housed at FCC Coleman in Florida. On November 28, 2022, the Court received Buhl's *pro se* motion for compassionate release, seeking relief pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 127.) He has served over 33 years of his life sentence. On December 7, 2022, the Government filed its opposition in response to Buhl's motion. (Doc. No. 129.)

## II.  DISCUSSION

To support his release from federal prison and transfer to state custody, Buhl asserts that he is 76 years old, has been incarcerated "well over 34 years," and "has never been housed within 500 miles of his former home and remaining family in Pennsylvania since 1988." (Doc. No. 127 at 3.) Buhl claims that although his "physical and mental health is remarkably good for such a geriatric man," he "expects no more than five to ten years of life remains realistically, especially so since the onset of the COVID-19 pandemic." (*Id.* at 4.) Finally, he asserts that in filing this motion for compassionate release, he does not seek "release from custody, but only his release from Federal to Commonwealth of Pennsylvania custody." (*Id.*)

At bottom, Buhl's request for compassionate release is a request for transfer.[4] Buhl explains that he does not seek to be released from custody *generally*; rather, he seeks release from federal custody so that he may be taken into custody by the Commonwealth of Pennsylvania. (*See id.* at 4.) In Buhl's mind, "it is of little and no consequence to the federal government nor to the Court itself, wherever I'm prisoned." (*Id.*) But a motion for compassionate release is not the proper legal mechanism to accomplish a transfer from federal to state custody. Although "the compassionate-release provision contemplates any form of sentence reduction," the statute "does *not* specifically grant a district court authority to change

---

[4] Accordingly, the Court need not recount the usual standards that govern a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

4

the site of a defendant's confinement." *United States v. Texeira-Nieves*, 23 F.4th 48, 58 (1st Cir. 2022) (emphasis added) (affirming district court's denial of prisoner's motion for compassionate relief that requested a change in the location of custody). "The statute's silence on this point comports with the BOP's plenary control over the place of the prisoner's imprisonment." *Id.* (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (cleaned up); *see also* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment….The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability[.]").

This Court lacks the authority to grant Buhl's requested transfer, as "the responsibility for the transfer of prisoners rests with the Bureau of Prisons, not the sentencing court." *United States v. Schubert*, No. 1:14-CR-00122, 2020 WL 5044029, at *1 (N.D. Ohio Aug. 26, 2020) (denying motion for compassionate release that requested transfer from federal prison to state facility). It is "well-settled" that "prisoners have no inherent constitutional right to placement in any particular prison." *McDonald v. Obama*, No. CIV.1:10-CV-379, 2010 WL 1526443, at *5 (M.D. Pa. Mar. 15, 2010), *report and recommendation adopted*, No. CIV.1:CV-10-0379, 2010 WL 1526447 (M.D. Pa. Apr. 15, 2010) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). If Buhl seeks a transfer to a *federal* incarceration facility within Pennsylvania, he may submit an administrative request to BOP, but "a designation of a place of imprisonment…is not reviewable by any court." *See* 18 U.S.C. § 3621(b). To the extent that Buhl seeks a transfer to a *state* incarceration facility within Pennsylvania, the Court lacks the jurisdiction to order a state to accept a federal prisoner; the Director of the Bureau of Prisons may authorize the transfer of a federal prisoner to state custody, but *only upon request by state authorities*. *See* 18 U.S.C. § 3623; *cf. Fisher v. Goord*, 981 F. Supp. 140, 176 (S.D.N.Y. 1997) (explaining that a federal

5

court lacks jurisdiction to order the transfer of a prisoner from state to federal custody). We cannot conclude that a request for transfer is a valid basis to support Buhl's motion for compassionate release.[5]

### III.   CONCLUSION

For the foregoing reasons, Buhl's Motion is denied.  An appropriate Order follows.

---

[5] Even if Buhl had raised some valid basis for compassionate release, the Court is satisfied that his motion would be denied upon consideration of the § 3553(a) sentencing factors. Buhl committed a crime of horrific violence, which the sentencing court aptly described as "heinous, cruel, brutal, and degrading." (Aug. 24, 1989 Sentencing Hr'g Tr. 75:23–24.) Buhl then attempted to obstruct justice by having three witnesses—including the victim—killed so they would not be available to testify against him. (*See* PSR at p. 9.) Buhl's criminal history is lengthy and demonstrates not only a tendency toward recidivism but also a propensity for violence of a sexual nature. Further, the Court finds Buhl's attempt to demonstrate rehabilitation to be disingenuous, as the Government reports that he has incurred several disciplinary infractions while in federal custody. (*See* Doc. No. 129 at 3.) Finally, Buhl exhibits no remorse for his actions. (*See* Aug. 24, 1989 Sentencing Hr'g Tr. 77:11–80:19.) Granting Buhl's motion for would not reflect the seriousness of his crimes, promote respect for the law, provide just punishment for his violent conduct, afford adequate deterrence, or protect the public from future crimes by him.